IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THERESA WIXOM,

                  Plaintiff,

  v.                                          OPINION and ORDER

KATHERINE LUSTER, TERA O'CONNOR,
GREG WINKLER, and                       20-cv-597-jdp
ROCK COUNTY,

                  Defendants.

---

Plaintiff Theresa Wixom worked for the Cooperative Educational Service Agency 2 (CESA), which administered a childhood disability services program for defendant Rock County. In 2018, Rock County decided to solicit proposals from other organizations to run the program and didn't select CESA. Wixom generated community opposition to the county's decision to contract with a different organization. At a Rock County Human Services Board meeting, defendants Katherine Luster, Greg Winkler, and Tera O'Connor, all county officials, criticized CESA and Wixom. Wixom sued in state court alleging that defendants' comments singled her out and ruined her professional reputation in violation of the Due Process Clause, Equal Protection Clause, and Wisconsin defamation and negligence law. Defendants removed the case to federal court.

Defendants move for summary judgment. The court will grant summary judgment to defendants on Wixom's federal constitutional claims. The court declines to exercise supplemental jurisdiction over Wixom's state-law claims and it will remand those claims to state court.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Cooperative Educational Service Agency 2 (CESA), is a state-authorized cooperative that provides services to school districts in southern Wisconsin. Starting in 1980, Rock County had contracted annually with CESA to administer its "Birth to 3" program for disabled children. The Rock County Human Services department and the Rock County Human Services Board oversee the county's Birth to 3 contracts. Theresa Wixom, as a CESA employee, was the program coordinator for the Rock County Birth to 3 program from about 2013 to 2018.

CESA exceeded its Birth to 3 Program budget by $37,000 in 2018. Wixom requested additional funding from the county and received $16,000. The county and CESA began negotiating the 2019 contract in late 2018 but failed to reach an agreement over which entity would be financially responsible for budget deficits. The parties dispute whether CESA went over budget in years prior to 2018.

Contract negotiations were still not resolved by February 2019. Wixom's supervisor proposed two options to address budget deficits in the contract. He stated that if the county didn't want to explore either option, CESA would stop its Birth to 3 services and lay off staff.

The county decided to issue a request for proposals to administer the Birth to 3 program for 2020. The proposal request was published on March 29, 2019. Wixom prepared CESA's proposal. Two other organizations, United Cerebral Palsy of Greater Dane County (UCP) and Rehab Resources, also submitted proposals. In May, Wixom asked to speak to the Rock County Human Services Board about the Birth to 3 program. Defendant Greg Winkler, a county behavioral health division manager, told her that she would not be permitted to address the board during the proposal solicitation process.

Six county proposal evaluators reviewed the proposals; all ranked UCP's as the top finalist. In July, the county announced that UCP was the finalist and informed CESA and Rehab Resources that they were not selected. That day, Wixom wrote and signed a letter to Birth to 3 families. It notified them about the county's decision not to renew its contract with CESA and solicited community support at a Rock County Human Services Board meeting scheduled for July 24. Wixom's letter stated, in part:

> The reason for my letter is we are seeking your support. The Rock County Human Services Board is voting to approve an out of county vendor . . . This will greatly impact the services provided in Rock County. If you are interested we would appreciate your presence at the meeting to show support of CESA 2 continuing to run the Birth to 3 Program as we have for the past 39 years.

Dkt. 11-2. Wixom also posted about the county's decision in a Facebook group for foster parents that she belonged to. She encouraged parents to attend the July 24 board meeting or send letters to the county in support of CESA. She also stated that UCP's bid was "a drastic cut in services . . . [the county is] explaining that nothing will change—just different providers . . . but after 39 years of doing it . . . it's hard to say nothing will change." Dkt. 11-3.

Wixom attended the July 24 board meeting and asked the board to delay its vote to award the Birth to 3 contract to UCP. The board tabled the vote until its next meeting on August 14. Before the August 14 meeting, the Beloit Daily News published a story about the Birth to 3 program and quoted Wixom saying that "a change in providers based on the new RFP would result in less services to children and families." Dkt. 12-3.

Many members of the public attended the August 14 board meeting and spoke about the county's decision to award the Birth to 3 contract to UCP. Staff from the county spoke after members of the public did. Defendant Katherine Luster, director of Rock County Human Services, said that Birth to 3 services would not be reduced. She also explained why the county

3

decided to contract with UCP instead of CESA, focusing primarily on financial concerns. She stated that CESA "has a history, a pattern, you know, before coming to HSD and then in a recent year of going over budget and coming to the county and asking for increased funds beyond their budget." Dkt. 27-3.

Winkler spoke next. He focused on the county's strained relationship with CESA and made the following statements:

- He became involved in contract discussions because the county was "struggling with how to effectively collaborate with CESA leadership;"
- He learned after several meetings with CESA that "CESA leadership tends to take a defensive stance rather than open dialogue to resolving concerns;"
- He found "CESA leadership to consistently focus on rote compliance with regulations at the expense of authentically embracing new and better practices;"
- The relationship between RCHS and CESA "has been completely unproductive;"
- County staff met before meetings with CESA to "strategize about what simple thing we're trying to accomplish and how to deal with the inevitable barriers that CESA leadership will impose;"
- He had "never encountered this kind of systematic resistance from an agency to partner with an agency with whom we contract to form a partnership;"

- The county's contracting decision wouldn't result reduced services, but "CESA leadership has perpetuated this misinformation even after we have instructed them as a contracted provider to stop and correct it."[1]

- "The current CESA leadership is terrifying families that it serves telling them that their services will be significantly reduced or lost. We've seen the letter to families and community partners, the posts on Facebook, the newspaper article and the families that are here today sharing their concerns."

*Id*.

Rock County Human Services deputy director Tera O'Connor spoke next. She said that fears about reduced Birth to 3 services had "impacted the perception of how we deliver services to all families of Rock County. This is harmful and [it's] causing undue stress and it's absolutely not okay with me." *Id.* She also discussed "a conversation with the Birth to 3 coordinator regarding a conflict of interest." *Id.* O'Connor read from an email exchange with Wixom, though without naming Wixom, about Wixom's "role as the Birth to 3 coordinator and as a foster parent." *Id.* O'Connor said, "during this dialogue [the coordinator] expressed the choices we talked about to problem solve and her response to me was that none of these solutions will work . . . In the end I was still unable to hold her accountable and she chose to do what she wanted to do." *Id.*

The board awarded the contract to UCP at the board meeting. Wixom's position as Birth to 3 coordinator at CESA was eliminated. Wixom emailed UCP's executive director,

---

[1] Wixom's summary judgment opposition brief attributes this comment to defendant Tera O'Connor, but a transcript of the board meeting shows that Winkler made the statements. Dkt. 27-3.

Ginger Schwahn, to express interest in applying for the role of director of the Birth to 3 program at UCP. Schwann responded that she preferred new leadership but that Wixom was welcome to consider and apply for other positions with UCP's Birth to 3 program.

Wixom sued defendants in state court for defamation, negligence, and federal constitutional violations. Defendants removed this action to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

ANALYSIS

Wixom raises a combination of state and federal claims. She brings three federal constitutional claims: (1) defendants' comments at the board meeting ruined her reputation and career prospects in violation of her right to due process; (2) defendants singled her out at the board meeting in violation of her right to equal protection; and (3) defendants unlawfully conspired to violate her First Amendment rights when they didn't allow her to speak to the board during the request for proposal process. Wixom also brings state law defamation claims against Luster, Winkler, and O'Connor in their official and individual capacities, and state law negligence claims against those defendants in their official capacities.

Summary judgment on Wixom's claims is appropriate if defendants show that there is no genuine dispute as to any material fact and that defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To avoid summary judgment, Wixom must point to specific facts showing that there is a genuinely disputed issue for trial, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and adduce sufficient evidence to allow a jury to find in her favor. *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012).

Wixom does not adduce evidence of reputational harm significant enough to support a due process claim, or that defendant treated her unreasonably compared to her colleagues or conspired to violate her rights. The evidence shows instead that defendants' statements at the board meeting were reasonable criticism of her work as program coordinator. The court will grant summary judgment on Wixom's federal claims, relinquish jurisdiction over Wixom's state-law claims, and remand those claims to state court.

**A. Due process claim**

Wixom contends that defendants' comments at the August 24 board meeting destroyed her liberty interest in her reputation and career prospects without due process. Dkt. 16, at 27. The Due Process Clause prohibits the state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To prevail on this claim, Wixom must demonstrate that she suffered a deprivation of a valid liberty interest without receiving due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

An individual has no constitutionally recognized liberty interest in her reputation itself. *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617 (7th Cir. 2002). Thus, mere defamation by a government employee does not violate due process, even it if diminishes one's prospects of future employment. *Id*. But if the reputational harm is so severe that it effectively blacklists the employee from obtaining comparable work, the resulting loss of employment in that field implicates a liberty interest. Thus, to survive summary judgment on her due process claim, Wixom must adduce evidence that the comments at the board meeting made it "virtually impossible for the [her] to find new employment in [her] chosen field." *Id*.

Wixom has no evidence that defendants' statements reached that level of severity. When Wixom expressed interest in the Birth to 3 director role at UCP, Schwahn told Wixom

7

that she wouldn't be considered for a leadership position but that she was welcome to apply for other job openings in the program. That doesn't show that Wixom was effectively blacklisted. Being labeled as incompetent or unable to perform certain management skills and being forced down a few notches in the professional hierarchy does not implicate the Due Process Clause. *Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir. 1993). Wixom points to no evidence that she unsuccessfully applied for another job at UCP, or for that matter, that she unsuccessfully applied for employment anywhere else. She has not adduced any evidence that defendants' statements made it virtually impossible for her to find a new job in her field.

### B. Equal protection class-of-one claim

Wixom contends that defendants denied her right to equal protection by making negative comments about her at the August 24 board meeting while sparing her colleagues from criticism. Dkt 16, at 31. The Equal Protection Clause provides that the state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. An equal protection claim is often based on the denial of equal treatment because of a person's membership in a particular class, such as race, sex, or national origin. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). But Wixom doesn't contend that she was discriminated against because of her membership in a particular class. She instead brings a class-of-one equal protection claim. Class-of-one claims are intended to forbid government actors from irrationally treating one person differently from other similarly situated persons. *See id.* at 597. To prevail on this claim, Wixom must show that she was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685 (7th Cir. 2013).

Establishing a rational basis for a disparity in treatment is a low bar; there must be no reasonably conceivable justification for the difference. *Id.* at 686.

Defendants had valid reasons to criticize Wixom at the board meeting. First, Wixom was the coordinator of the Birth to 3 program in 2018 when CESA exceeded its budget by $37,000. Second, Wixom tried to stop the county from finalizing the contract by representing to families—in a letter, in the media, and on Facebook—that services for disabled children would be reduced. Dkts. 11-2; 11-3; 12-3. Third, Wixom delayed the Rock County Human Services Board vote to award the contract to UCP. No reasonable jury could could find that defendants lacked a rational basis for making the statements that they did at the August 24 board meeting. Indeed, Wixom's own efforts to generate public attention compelled the board members to explain their decision not to renew the CESA contract, and to answer Wixom's criticisms of their decision.

Wixom also contends that the county treated CESA differently than the other organizations that submitted proposals by designing the request for proposals process to disadvantage CESA. Dkt. 22, at 32. But Wixom may only assert her own legal rights or interests in this lawsuit; she doesn't have standing to base her claim to relief on CESA's legal rights or interests. *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013).

**C.  Section 1985 conspiracy claim**

Wixom contends that defendants conspired to infringe her First Amendment rights by refusing to let her speak to the board during the request for proposals process. She brings the claim under 42 U.S.C. § 1985(3), which prohibits individuals from conspiring to deprive another person of their rights to equal protection. *Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008). Defendants correctly point out that Wixom's complaint alleges that defendants

9

conspired to deprive Wixom of her employment. She didn't assert a conspiracy to violate her First Amendment rights until summary judgment. A claim asserted for the first time in response to a motion for summary judgment is not properly raised, so the claim could be deemed forfeited. *Conner v. Illinois Dep't of Natural Resources*, 413 F.3d 675, 679 (7th Cir.2005).

Wixom's claim falters on the merits even if it had been timely asserted. To prevail on a § 1985(3) claim, Wixom must show: (1) a conspiracy, (2) whose purpose is to deprive a person of equal protection rights, (3) an act in furtherance of the conspiracy, and (4) a deprivation of rights. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1024 (7th Cir. 2000). To establish that the purpose of the conspiracy was to deprive a person of their equal protection rights, a plaintiff must allege some racial or other class-based discriminatory animus. A class-of-one claim, such as Wixom's, doesn't support at § 1985(3) claim. *Thorncreek Apartments I, LLC v. Vill. of Park Forest*, No. 08 C 1225, 2015 WL 2444498, at *2 (N.D. Ill. May 20, 2015) (collecting cases).

Wixom fails to adduce evidence to support required elements her § 1985(3) claim. She has not adduced evidence of any agreement among two or more of the defendants to deprive her of any rights. She has not alleged that she faced any class-based discrimination. And she has not shown any actual deprivation of her right to speak. She was not allowed to speak to the board during the proposal solicitation process, but she does not show that prohibition was unlawful or that it violated her First Amendment rights. She otherwise spoke freely about the Birth to 3 program and the competing proposals to the community and to the board.

**D. State-law claims**

Wixom brings defamation and negligence claims under state law. The court would have supplemental jurisdiction over those claims under 28 U.S.C. §1367(a), which permits a federal district court to hear a state-law claim if it is related to a federal claim in the same action.

Wixom doesn't allege any other basis for federal jurisdiction over the state-law claims. Absent unusual circumstances, district courts will relinquish supplemental jurisdiction over state-law claims if all federal claims have been resolved before trial. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). Here, neither party identifies any unusual circumstances that would justify retaining jurisdiction over Wixom's state-late claims.

The court will grant summary judgment in favor of defendants on Wixom's federal claims, decline supplemental jurisdiction over Wixom's state-law claims, and remand those claims to state court.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 8, is GRANTED with respect to plaintiff's federal constitutional claims. Those claims are DISMISSED with prejudice.

2. The court relinquishes supplemental jurisdiction over plaintiff's remaining state-law claims under 28 U.S.C. 1367 and remands those claims to state court.

Entered September 9, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge